Jasen, J.
These consolidated actions arose out of an accident wherein three men died and five others were injured.
On October 2,1957, one John J. Rooney, an engineer employed by the Bureau of Sewage Disposal of the City of New York, died of gas asphyxiation after descending into an interceptor sewer located 30 or 40 feet below the ground in the Borough of Queens to ascertain the source of water in the bulkhead. At the time of the accident, he was wearing an oxygen-type protective mask manufactured by the defendant herein. The estate of John J. Rooney recovered a judgment against the defendant on a theory of breach of implied warranty of merchantability, in “ that the mask did not work because the plunger was defective.” (Rooney v. Healy Co., 20 N Y 2d 42, 46.)
The two other decedents, and the surviving plaintiffs, were all sewage treatment workers and members of Rooney’s work team at the time of the accident. Plaintiff Fattore entered *463 the sewer tunnel with Rooney after testing for gas and finding none. Decedent Guarino was stationed at the bottom level of the shaft, decedent Messina was at the next level, and a survivor, Mirabile, was at the upper level. After correcting the water leakage problem, Rooney and Fattore began to recross the tunnel and return to the shaft, at which time Fattore felt Rooney slump behind him. He attempted to drag Rooney from the sewer tunnel, but, finding himself having difficulty breathing, he released Rooney, ripped off his own mask, and hollered for help. Guarino and Messina were fatally stricken by the lethal gas present in the sewer when they left their posts in the sewer shaft and entered the sewer tunnel without masks in answer to Fattore’s call for help. The other surviving plaintiffs were injured as they ais® descended into the sewer in response to Rooney’s plight.
This appeal presents for our review the “ danger invites rescue ’ ’ doctrine.
In New York the rescue doctrine had its historical genesis in Eckert v. Long Is. R. R. Co. (43 N. Y. 502 [1871]), which stated that the plaintiff’s intestate, who was killed while attempting to rescue a child on the railroad tracks, was not to be found contributorily negligent unless acting rashly or recklessly. The purpose of the doctrine, we said, was to prevent a plaintiff from being found contributorily negligent, as a matter of law, when he voluntarily placed himself in a perilous situation to prevent another from suffering serious injury.
The doctrine has been most frequently applied when a defendant through his negligence either injured or imperilled another and a third person was injured in attempting to rescue the person in jeopardy. (Wagner v. International Ry. Co., 232 N. Y. 176 [1921]; Paul v. Flag Fish Co., 7 A D 2d 656 [2d Dept., 1958].) However, the doctrine has also been applied when a person negligently places himself in danger (Carney v. Buyea, 271 App. Div. 338 [4th Dept., 1946]) or attempts suicide (Talbert v. Talbert, 22 Misc 2d 782 [Sup. Ct., Schenectady County, 1960]) so as to invite rescue.
In these actions plaintiffs seek application of the ‘‘ danger invites rescue ” doctrine to a situation where a breach of warranty endangers a person so as to invite rescue by a third party. It is significant to note that all of the cases that have invoked *464 the rescue doctrine since it was first promulgated by this court have been negligence actions. This is, we believe, the first instance in which the doctrine has been invoked in an action where the gravamen of the wrong complained of has been breach of warranty.
We do not believe that the theory of the action, whether it be negligence or breach of warranty, is significant where the doctrine of "danger invites rescue ’ ’ applies. A breach of warranty and an act of negligence are each clearly wrongful acts. Both terms are synonymous as regards fixation of liability, differing primarily in their requirements of proof.
As we recently held in Provenzo v. Sam (23 N Y 2d 256, 260), the rescue doctrine should be applied when “ one party by Ms culpable act has placed another person in a position of imminent peril which invites a third person, the rescuing plaintiff, to come to his aid.” (Emphasis supplied.)
Moreover, we have held that “ [a] breach of warranty * * * is not only a violation of the sales contract out of which the warranty arises but it is a tortious wrong ” (Goldberg v. Kollsman Instrument Corp., 12 N Y 2d 432, 436 [1963]; see Greco v. Kresge Co., 277 N. Y. 26, 35 [1938] for similar language).
Here the defendant committed a culpable act against the decedent Rooney, by manufacturing and distributing a defective oxygen-producing mask, for which it has been held accountable in damages. (Rooney v. Healy Co., supra.) By virtue of this defendant’s culpable act, Rooney was placed in peril, thus inviting his rescue by the plaintiffs who were all members of Rooney’s sewage treatment crew. There was no time for reflection when it became known that Rooney was in need of immediate assistance in the dark tunnel some 30 to 40 feet below the street level. These plaintiffs responded to the cries for help in a manner which was reasonable and consistent with their concern for each other as members of a crew. To require that a rescuer answering the cry for help make inquiry as to the nature of the culpable act that imperils someone’s life would defy all logic.
As Judge Cardozo so eloquently stated in Wagner v. International Ry. Co. (supra): ‘ ‘ Danger invites rescue. The cry of distress is the summons to relief * * * The wrong that *465 imperils life is a wrong to the imperilled victim; it is a wrong also to Ms rescuer.” (232 N. Y. 176, 180 [emphasis added].)
“ [T]hese judgments,” the Appellate Division correctly held, 'while nominally premised on a breach of warranty theory as applied to a user, rest fundamentally on the rescue doctrine, a concept unaffected by the exact label put upon the wrong which created the danger to the imperiled victim. For the same reason, the rescuer’s status as a user or nonuser of the defective instrumentality is not directly relevant to our analysis. It is enough that the plaintiffs attempted to rescue a user with respect to whom a breach of warranty or 'tortious wrong ’ had been committed.” (31 A D 2d 261.)
We conclude that a person who by his culpable act, whether it stems from negligence or breach of warranty, places another person in a position of imminent peril, may be held liable for any damages sustained by a rescuer in Ms attempt to aid the imperilled victim.
Defendant raises several objections to the trial court’s charge to the jury which we do not sustain. Specifically, it is contended that the trial court erred in not submitting to the jury the question of whether the plaintiffs were rescuers and the issue of proximate cause. Although the charge of the trial judge is not as clear as it might have been in places,[1] it cannot be said that reversible error was committed. Defendant’s exceptions to the charge do not include any request in relation to the issue of whether these plaintiffs were, in fact, rescuers. Moreover, there is no testimony to indicate that they were anything other than rescuers. Consequently, such confusion as does appear in the record cannot be deemed to have been prejudicial to the defendant.
Similarly as to proximate cause, we find no prejudicial error.[2] *466 The jury was instructed that if they find that the defective mask ‘[1] brought the chain of -events into being * * * then the plaintiffs are entitled to verdicts.” Additionally, they were charged that plaintiffs could not have acted in a reckless or improvident manner in attempting rescue. Although the precise phraseology requested was absent, the essence of defendant’s request was adequately conveyed to the jury.
Accordingly, the order and judgment appealed from should be affirmed.

. For instance, the charge reads that “ Those issues already decided and eliminated are * * * that the plaintiffs in this case responded to a call for help; that they responded to that call for help by entering the sewer to give the help that might be required Yet the next paragraph states that there is an issue of fact as to “ whether or not these seven plaintiffs had reason to believe that their help was needed”.

. Although the Judge specifically refused to charge the jury as to whether or not the defect in the mask was the proximate cause of the injuries to plaintiffs, he did state that “ [t]he fact is that it [the mask] was defective and if that brought the chain of events into being, if you so find, then the plaintiffs are entitled to verdicts.”