Debowski v City of New York (2004 NY Slip Op 50528(U))

[*1]

Debowski v City of New York

2004 NY Slip Op 50528(U)

Decided on February 25, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 25, 2004

Supreme Court, Kings County
JAROSLAW DEBOWSKI, Plaintiff,
against
THE CITY OF NEW YORK AND THE NEW YORK CITY BOARD OF EDUCATION AND NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY, Defendants,
JAROSLAW DEBOWSKI, Plaintiff,
against
TISHMAN CONSTRUCTION CORPORATION OF NEW YORK, JET RESOURCES, INC. AND TISHMAN CONSTRUCTION CORPORATION AND JET RESOURCES, INC., A JOINT VENTURE, Defendants
2045/99

Laura Jacobson, J.
The instant actions arise out of a October 14, 1998 construction-site accident at Public School 27 in Brooklyn (the school or the building) in which plaintiff sustained various injuries. Prior to the accident, City, which owned PS 27, hired Tishman-Jet to serve as the general contractor/construction manager on a renovation project involving the school. Plaintiff's employer, Adam's European Contracting (Adams), was subsequently subcontracted to perform certain masonry work on the project.
On the day of the accident, plaintiff and his co-workers were assigned the task of re-pointing the brick facade of the school. The first step in this process involved cleaning the entire facade using a high pressure water hose. Thereafter, concrete mortar was manually mixed, placed in buckets, and ultimately applied to the spaces between the bricks using a trowel. At the time of the accident, plaintiff and his co-workers were working approximately 10-14 feet above street level on a "sidewalk bridge" that had previously been erected adjacent to the school building. Plaintiff's job was to mix the mortar, place it in a bucket, and pass the bucket up to a co-worker on a scaffold who would perform the actual pointing work. The accident occurred as plaintiff was attempting to pass the bucket of mortar, which weighed approximately 30 pounds, up to the worker on the scaffold. Specifically, as plaintiff lifted the bucket up to the level of his chest, he slipped and fell as a result of a wet, muddy condition on the wooden planks of the sidewalk bridge.[FN1] Fortunately, plaintiff did not fall off of the sidewalk bridge.
By summons and complaint dated January 20, 1999, plaintiff brought action #1 against City alleging violations of Labor Law §§ 240(1), 241(6), 200, as well as common law negligence. Thereafter, plaintiff brought action #2 against Tishman-Jet alleging identical claims. City and Tishman-Jet now move jointly to dismiss plaintiff's actions against them.
 Plaintiff's Labor Law §240 (1) Claim
 In moving to dismiss plaintiff's Labor Law § 240(1) cause of action, City and Tishman-[*2]Jet maintain that plaintiff's accident was not gravity-related for purposes of the statute. In support of this argument, City and Tishman-Jet point to the undisputed facts that plaintiff did not fall off of the sidewalk bridge, nor was he struck by an object falling from above. Instead, plaintiff merely slipped and fell on the sidewalk bridge.
In opposition to this portion of City and Tishman-Jet's motion, plaintiff points out that at the time of the accident, he was working on an elevated platform and attempting to pass a 30 pound bucket to a co-worker stationed above him without the benefit of a pulley or hoist. Thus, plaintiff reasons that Labor Law § 240 (1) is applicable because the accident involved risks related to differences in elevation and was caused by the lack of any safety devices. In addition, plaintiff argues that the fact that the sidewalk bridge did not have any guardrail which he could have grabbed to prevent himself from falling constitutes a Labor Law § 240(1) violation.
Labor Law § 240(1) provides in pertinent part that:

"All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the
 work, in the erection, demolition, repairing, [or] altering . . . of a building
 or structure shall furnish or erect, or cause to be furnished or erected for
 the performance of such labor, scaffolding, hoists, stays, ladders, slings,
 hangers, blocks, pulleys, braces, irons, ropes, and other devices which
 shall be so constructed, placed and operated as to give proper protection
 to a person so employed."

Labor Law § 240(1) was enacted to "prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person." (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501). In order to accomplish this goal, the statute places the responsibility for safety practices and safety devices on owners, general contractors, and their agents who "are best suited to bear that responsibility" (id. At 500; see also Zimmer v Chemung County Perf. Arts, 65 NY2d 513, 520). "The duty imposed by Labor Law § 240(1) is nondelegable and . . . an owner or contractor who breaches that duty may be held liable in damages regardless of whether it has actually exercised supervision or control over the work" (Ross at 500). Furthermore, the statute is to be construed as liberally as possible in order to accomplish its protective goals (see Martinez v City of New York, 93 NY2d 322, 326). However, given the exceptional protection offered by Labor Law § 240(1), the statute does not cover accidents merely tangentially related to the effects of gravity. Rather, gravity must be a direct factor in the accident as when a worker falls from a height or is struck by a falling object (Ross, 81 NY2d at 501; Rocovich v Consolidated Edison Co., 78 NY2d 509, 513).
It is clear that plaintiff's accident was not gravity-related for the purposes of Labor Law § 240(1). Although plaintiff was working on an elevated platform at the time of the accident, he did not fall off of the platform. Accordingly, it cannot be said that plaintiff fell from a height inasmuch as "plaintiff's fall . . . occurred at the same level as his work site" (Grant v [*3]Reconstruction Home, Inc., 267 AD2d 555, 556). Furthermore, to the extent that plaintiff's injuries were caused by the bucket of mortar, this bucket did not constitute the type of falling object which Labor Law § 240(1) was enacted to protect against. The bucket was only at the level of plaintiff's chest when he slipped and fell. Thus, "there was no height differential between plaintiff and the falling object" (Narducci v Manhasset Bay Assocs., 96 NY2d 259, 269). Under the circumstances, plaintiff's Labor Law § 240(1) claim is dismissed.
 Plaintiff's Labor Law § 241(6) Claim
 City and Tishman-Jet also move to dismiss plaintiff's Labor Law §241 (6) cause of action. In so moving, the defendants argue that plaintiff has failed to allege any concrete New York State Industrial Code violations which are applicable given the circumstances of plaintiff's accident. In opposition to this portion of City and Tishman-Jet's motion, plaintiff maintains that his allegation that the defendants violated 12 NYCRR 23-1.7(d) and 23-1.7(e)(2) are sufficient to support his Labor Law § 241(6) claim.
Labor Law §241(6) provides in pertinent part that:

 "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged,
 operated and conducted as to provide reasonable and adequate protection
 and safety to persons employed therein or lawfully frequenting such places."
 Labor Law §241(6), which was enacted to provide workers engaged in construction, demolition, and excavation work with reasonable and adequate safety protections, places a nondelegable duty upon owners and contractors to comply with the specific safety rules set forth in the Industrial Code (Ross, 81 NY2d at 501-502). Accordingly, it is well settled that in order to support a cause of action under Labor Law § 241(6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of a section of the Industrial Code that is applicable given the circumstances of the accident, and sets forth a concrete standard of conduct rather than a mere reiteration of common-law principles (Ross at 502; Ares v State, 80 NY2d 959, 960; see also Adams v Glass Fab, 212 AD2d 972, 973).
 12 NYCRR 23-1.7(d) provides that "[e]mployers shall not suffer or permit any employee to use a . . . platform or other elevated working surface, which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing." This provision "contains specific directives that are sufficient to sustain a cause of action under Labor Law § 241(6)" (Whalen v City of New York, 270 AD2d 340, 342). However, 23-1.7(d) is not applicable under the facts of this case. The evidence before the court indicates that plaintiff slipped and fell as a result of an accumulation of water and mud on the planks on the sidewalk bridge. Given the fact that the brick pointing work that plaintiff and his co-workers were performing involved power-washing the facade of the school building, making mortar by blending concrete mix and water, and carrying the mortar in buckets across the sidewalk bridge, the water and mud on the surface of the sidewalk bridge were not foreign substances as contemplated under 23-1.7(d) (Salinas v Barney Skanska Constr. Co., 2003 WL 22957925 [NYAD 2Dept]; Miranda v City of New York, [*4]281 AD2d 403, 404). Instead, these conditions were a normal and integral part of the brick pointing operation (compare Beltrone v City of New York, 299 AD2d 306, 308). Indeed, plaintiff testified that his boots were "soaked through after the whole day of work." Under the circumstances, 12 NYCRR 23-1.7(d) may not serve to support plaintiff's Labor Law §241(6) claim.
12 NYCRR 23-1.7(e)(2) provides that "[t]he parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed"(emphasis added). This provision is sufficiently specific to support a Labor law §241(6) cause of action. However, as the court discussed above, given the fact that the underlying brick pointing work involved power-washing the building's facade, mixing concrete mortar, and carrying this mortar in buckets across the sidewalk bridge, the wet, muddy condition that caused plaintiff to slip was an integral part of the work that plaintiff was performing. Thus, 23-1.7(e)(2) is not applicable in this case (Harvey v Morse Diesel Intl., 299 AD2d 451, 453; Alvia v Teman Elec. Contr., 287 AD2d 421, 423). [FN2]
Plaintiff also asserted that defendants violated 12 NYCRR 23-1.18. This section of the Industrial Code sets forth the requirements for sidewalk sheds and barricades and requires barricades on the side toward the building unless it is constructed solidly against the face of the building. Plaintiff claims that he could have averted his fall if there were handrails on the workbridge. At deposition, plaintiff stated there was no rail on the side of the workbridge on the side closest to the building. Defendants fail to address this section in their papers. Accordingly, plaintiff's claims pursuant to 12 NYCRR 23-1.18 are upheld. That part of City and Tishman-Jet's motion which seeks to dismiss plaintiff's Labor Law § 241 (6) claims, however, is granted.
Plaintiff's Labor Law § 200/Common-Law Negligence Claims
In support of this argument, City and Tishman-Jet point to plaintiff's deposition testimony. When asked his supervisor's name, plaintiff responded that he only knew the name of his foreman and added that there was also an emergency inspector on site. There is no further elaboration on the identity, employer or role of the inspector. It should also be noted that plaintiff is not fluent in English and requires a translator. There is nothing in defendants' papers that indicates the role that any of the defendants played at the work site.
 Labor Law § 200 is a codification of the common-law duty placed upon owners and contractors to provide employees with a safe place to work (Kim v Herbert Constr. Co., 275 AD2d 709, 712). In order for a contractor to be held liable under a Labor Law § 200 common-law negligence cause of action, there must be evidence that the owner or contractor controlled and supervised the manner in which the underlying work was performed, or that it created or had notice of the alleged dangerous condition which caused the accident (id. at 712; Kanarvogel v [*5]Tops Appliance City, Inc., 271 AD2d 409, 411).
On a motion for summary judgment the burden is on the movant to come forward with sufficient evidence in proper form to establish its claim (Zuckerman v City of New York, 49 NY2d 557). In this case, defendants' submission of plaintiff's deposition testimony is insufficient to establish the relationship between the entities and the chain of supervision.
Accordingly, defendants have not made a prima facie showing of their entitlement to summary judgment on plaintiff's Labor Law § 200 claim and defendants' motion is denied as to this claim.
This constitutes the decision and order of this court.
DATED: February 25th, 2004
 ENTER
 __________________________
 LAURA JACOBSON, JSC
Footnotes

Footnote 1:At his initial deposition, plaintiff testified that there was certain electrical packaging debris on the sidewalk bridge at the time of the accident but was unsure if this caused him to slip and fall. At a subsequent deposition and in his sworn affidavit, plaintiff attributed his fall solely to the wet, muddy condition of the sidewalk bridge.

Footnote 2:In his opposition papers, plaintiff also cites to 12 NYCRR 23-1.7(e)(1). However, this provision only applies to passageways. Here, it is undisputed that the accident occurred in a working area rather than a passageway. Hence, 23-1.7(e)(1) is not applicable.